**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Patrick Casey McAuley,
Petitioner
-vs-
Charles L. Ryan, *et al.*,
Respondents.

CV-14-1756-PHX-SPL (JFM)

**Report & Recommendation**
**on Petition for Writ of Habeas Corpus**

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Tucson, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on August 6, 2014 (Doc. 1).  On January 16, 2015, Respondents filed their Limited Answer (Doc.  15).   Petitioner filed a Reply on February 9, 2015 (Doc.  18).

In the interim, on November 7, 2014, Petitioner filed a Motion to Hold Petition in Abeyance (Doc. 9).   Respondents responded on December 5, 2014 (Doc. 13), and Petitioner replied on December 12, 2014 (Doc. 14).

The Petitioner's Petition and Motion to Hold in Abeyance are now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals summarized the factual background as follows:

1

Late in the evening of January 21, 1991, Defendant staggered to the door of a mobile home west of Phoenix asking for assistance. He was bleeding profusely from a wound to his throat. Sheriff's deputies and an ambulance responded promptly. An emergency medical technician described Defendant's throat wound as "superficial" and believed that it might be a "sympathy slash" – a self-inflicted wound.

Defendant told deputies at the scene that someone needed to check on his wife, whom he last saw while they were parked on a roadside miles away. Defendant said that he did not know who had attacked him. As he was transported by helicopter to the hospital, he told the flight nurse that he had been attacked and robbed by two persons. Two days later, when he was interviewed by a detective in his hospital room, Defendant claimed that he was "not clear on things that happened that night" and may have "blacked out."

Deputies found Defendant's vehicle, a Chevrolet Blazer, approximately three-tenths of a mile from the mobile home. Police found Paula's body nearby. Her sweater was saturated with blood from a slash to her throat. Her pants had been removed, and her pantyhose had been rolled down below her knees. At an autopsy, the medical examiner determined that the cause of Paula's death was manual strangulation. He also determined that Paula had suffered a fractured pelvis, fractured ribs, a lacerated liver, and a cluster of abrasions to her back consistent with being struck by a motor vehicle. The medical examiner testified that the wound to Paula's throat had probably been inflicted post-mortem.

(Exhibit N, Mem. Dec. at 2-3.)  (Exhibits to the Answer, Doc.15, are referenced herein as "Exhibit ___.")   The investigation revealed a troubled and violent marriage, with arguments that had continued through the night of the murder.  (*Id.* at 3-4.)

**B. PROCEEDINGS AT TRIAL**

On February 1, 1991, Petitioner was indicted in Maricopa County Superior Court on a charge of first degree, premeditated murder. (Exhibit A, Indictment.)  Petitioner proceeded to a jury trial which lasted almost a month, and was eventually found guilty as charged.  (Exhibit B, M.E. 6/12/92.)

Prior to sentencing, on July 8, 1992, Petitioner filed with the trial court a *pro se* "Writ of Habeas Corpus," (Reply, Doc. 18 at Exhibits), arguing that his rights had been denied in the course of the trial, and evidence had been fabricated, and requesting that the "judgment of guilty be vacated."

On August 21, 1992, Petitioner was sentenced to life without possibility of parole or other release until serving 25 years flat time.  (Exhibit C, Sentence.)

**C.  PROCEEDINGS ON DIRECT APPEAL**

Petitioner filed a Notice of Appeal (Exhibit D).  However, because of his then pending first post-conviction relief proceeding, Petitioner sought a stay of the appeal pending conclusion of that proceeding.  The request was granted.  (Exhibit F, Order 12/6/93.)

Upon conclusion of the PCR proceeding, Petitioner filed an Opening Brief (Exhibit K), asserting involuntary statements, improper evidence of prior bad acts and gruesome photos, and various instructional errors. (Exhibit K, Opening Brief.)    The Arizona Court of Appeals affirmed Petitioner's conviction and sentence.  (Exhibit N, Mem. Dec. at 16.)

Petitioner sought review by the Arizona Supreme Court, which summarily denied review in an Order filed November 22, 1995 (Exhibit Q).


**D.  PROCEEDINGS ON POST-CONVICTION RELIEF**

**First PCR Proceeding** – During the pendency of his direct appeal, Petitioner commenced his first PCR proceeding by filing a Notice of Post-Conviction Relief on November 26, 1993 (Exhibit E).   Ultimately, appointed counsel filed a Notice of Completion of Review (Exhibit G), evidencing an inability to find an issue for review. The PCR court granted leave for Petitioner to file a *pro per* PCR petition.  (Exhibit I, M.E. 3/11/94.)  Petitioner failed to file such a petition, and on May 26, 1994, the PCR proceeding was dismissed.  (Exhibit J, M.E. 5/26/94.)

Petitioner did not seek further review in that proceeding.

**Second PCR Proceeding** – Almost 18 years later, Petitioner began a series of post-conviction relief proceedings, all but the most recent of which were founded upon a theme that he had been wrongly convicted based upon a theory of instantaneous premeditation.

On June 18, 2013, Petitioner commenced his second PCR proceeding by filing a second Notice of PCR (Exhibit S), arguing actually innocence, and that he had failed to

raise a claim of conflict of interest based on the same counsel representing him on direct appeal and in his first PCR proceeding, because of his mental condition and long stay in the prison psychiatric hospital, and lack of adequate legal assistance. Petitioner also argued a vague statute, vague indictment, variance from the facts of the indictment, prosecutorial vindictiveness, judicial bias, false evidence, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel.

On July 16, 2013, the PCR court summarily dismissed the proceeding as untimely and successive. The court found the proffered evidence of actual innocence (which it erroneously described as being based on a Facebook post attributing the crime to someone else) inadequate to meet the clear and convincing evidence standard, the claim of unconstitutional statute nonspecific, and the remaining claims barred from review. (Exhibit T, ME. 7/16/13.)

Petitioner did not seek further review in that proceeding.

**Third PCR Proceeding** – On September 4, 2013, Petitioner filed his third PCR Notice (Exhibit U), arguing error in rejection of his actual innocence claim which was not based on a Facebook post, and that any failure to allege adequate facts of law as based upon the limited legal resources available in the prison. Petitioner also argued instructional error on premeditation, and a vague statute on premeditation, shifting of the burden of proof to Petitioner. Petitioner argued that because the constitutional claim asserted was so unique it was not reasonably previously available. Petitioner also argued judicial bias.

On October 1, 2013, the PCR court again summarily dismissed the proceeding as untimely and successive. (Exhibit V, ME. 10/1/13.) The court amended *nunc pro tunc* the order on the second PCR proceeding, eliminating the reference to the Facebook post, and supplanting a reference to the void for vagueness claim.

Petitioner did not seek further review in that proceeding.

**Fourth PCR Proceeding** – On October 28, 2013, Petitioner filed his fourth PCR Notice (Exhibit W). Petitioner argued error in the order (Exhibit T) on his second PCR

4

proceeding, judicial bias, a vague statute on premeditation, and prosecutorial vindictiveness.  He again argued that he was actually innocent because his conduct did not fit the definition of premeditation, and that the judge's misapplication of the law qualified as a change in the law.

On December 17, 2013, the PCR Court summarily dismissed the proceeding, finding Petitioner's claims both untimely and successive.  (Exhibit X, M.E. 12/17/13.)  The same order was again entered on January 7, 2014.  (Exhibit Y, ME 1/7/14.)

Petitioner did not seek further review in that proceeding.

**Fifth PCR Proceeding** – On November 7, 2014, Petitioner filed his fifth PCR Notice (Exhibit Z), asserting newly discovered evidence in the form of challenges to the forensic evidence presented at trial based upon a 2009 study casting doubt on the credibility of various genres of forensic evidence.

On January 7, 2014, the PCR Court summarily dismissed the proceeding, finding Petitioner's claim both untimely and successive.  (Exhibit AA, M.E. 1/7/15.)

Petitioner asserts that he has sought review by the Arizona Court of Appeals.[1] (Reply, Doc. 18 at 7.)

**E.  PRESENT FEDERAL HABEAS PROCEEDINGS**

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on August 6, 2014 (Doc. 1).  Petitioner's Petition asserts the following three grounds for relief:

---

[1] The undersigned concludes that abstention under *Younger v. Harris,* 401 U.S. 37, 43 (1971) is not necessary where the pending state proceeding is not a direct appeal, but a state post-conviction proceeding.  *See Smith v. Williams*, 2013 WL 1501583, 2 (D.Nev. 2013) (concluding that  *Henderson v. Johnson,* 710 F.3d 872 (9th Cir. 2013) clarified "that the rule [of *Sherwood v. Tomkins*, 716 F.2d 632 (9th Cir.1983) (applying *Younger*)] applies to pending direct appeals, and not to pending state post-conviction proceedings"); and *Butler v. Long*, 752 F.3d 1177, 1181 (9th Cir. 2014) *as amended on denial of reh'g and reh'g en banc* (June 24, 2014) ("This Court has made plain that where no direct state appeal is pending 'Sherwood does not' undermine the important precedent requiring district courts first to grant leave to amend before dismissing a mixed petition.") Accordingly, the undersigned has not recommended abstaining by a dismissal without prejudice.

> In Ground One, Petitioner alleges that his Sixth and Fourteenth Amendment rights to the effective assistance of counsel were violated. In Ground Two, Petitioner alleges that his Fifth and Fourteenth Amendment rights were violated because A.R.S. § 13-1101 is "unconstitutionally vague." In Ground Three, Petitioner alleges that his Fifth and Fourteenth Amendment rights were violated due to "judicial bias".

(Order 10/21/14, Doc. 4 at 2.)

**Motion to Hold in Abeyance** - On November 7, 2014 (the day he filed his fifth PCR notice (Exhibit Z)), Petitioner filed his Motion to Hold Petition In Abeyance (Doc. 9), arguing that this action should be stayed to allow him to exhaust his state remedies on his claim of newly discovered evidence, founded upon the August, 2009 report from the National Academy of Sciences entitled *Stregnthening Forensic Science in the United States: A Path Forward* (hereinafter "NAS Report").[2]

Respondents responded (Doc. 13), arguing that the motion should be denied because any such claim would be barred by the habeas statute of limitations.

Petitioner has replied (Doc. 14) arguing that he is entitled to equitable tolling based upon his forced medication until 2000, detention in mental health lock down facilities, and his mental illness. Thus, he argues, he should be permitted to exhaust his state remedies on his newly discovered evidence claim.

**Response** - On January 16, 2015, Respondents filed their Response (" Limited Answer") (Doc. 15).  Respondents argue that the Petition is untimely and barred by the habeas statute of limitations.   Respondents also argue that Petitioner has either procedurally defaulted his state remedies on his claims, or they have been procedurally barred based on an independent and adequate state ground.

**Reply** - On February 9, 2015, Petitioner filed a Reply (Doc. 18).  Petitioner argues that his untimeliness and failures to properly exhaust state remedies should be excused based on his being forcibly medicated until 2001, by which time ADOC had removed the law libraries from the state prisons, rendering Petitioner unable to conduct research.  Petitioner argues he is entitled to counsel and an evidentiary hearing to pursue

---

[2]  Available at   https://www.ncjrs.gov/pdffiles1/nij/grants/228091.pdf  (last accessed 4/22/15).

those allegations.    Petitioner further argues that his claim of newly discovered evidence would not be barred by the statute of limitations or state law.

### III. APPLICATION OF LAW TO FACTS

#### A. MOTION TO HOLD IN ABEYANCE

Petitioner has moved (Doc. 9) to hold this proceeding in abeyance to allow him to exhaust his state remedies based on a claim of newly discovered evidence attacking the credibility of the forensic evidence introduced at trial.   Petitioner argues that such evidence would likely result in a different outcome at trial and shows a denial of due process from admission of the discredited forensic evidence.

**Applicable Standard** – There are generally two procedures applicable to attempts to stay the consideration of a habeas petition to exhaust state remedies.

Mixed Petitions - The first standard, adopted in *Rhines v. Weber*, 544 U.S. 269 (2005), applies where a Petitioner has a habeas petition pending which is a mixture of claims on some of which the state remedies are exhausted, and others on which the state remedies are not exhausted.

> Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

544 U.S. at 277.  Thus, a stay of such a petition requires good cause for the failure to exhaust, and a finding of some merit.

Fully Exhausted Petitions – The second standard, originally adopted in *Kelly v. Small*, 315 F.3d 1063 (9th Cir.2003) and reaffirmed after *Rhines* in *King v. Ryan*, 564 F.3d 1133 (9th Cir. 2009), applies where the petitioner has exhausted his state remedies on all of the claims in his pending petition (even if the petition had to be amended to delete unexhausted claims).  In such a situation, good cause for failure to exhaust is not required.  Nonetheless, the habeas court may deny a stay if the claim to be added would,

in any event, be untimely when filed. *King*, 564 F.3d at 1142-1143.

Wholly Unexhausted Petitions – Finally, where a petition contains no claims on which a petitioner's state remedies have been exhausted, a habeas court should ordinarily dismiss the petition. *See Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) (declining to extend *Rhines* to wholly unexhausted petitions). *But see Heleva v. Brooks* , 581 F.3d 187 (3rd Cir. 2009) (criticizing *Raspberry*, and finding in *Pace v. DiGuglielmo*, 544 U.S. 408 (205) authority to stay wholly unexhausted "protective" petitions filed to avoid the statute of limitations while exhausting state remedies). *See also Pace*, 544 U.S. at 416 ("A prisoner seeking state postconviction relief might avoid this predicament, however, by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted.") (citing *Rhines*). At best, the habeas court could apply *Rhines* upon a showing of good cause for failure to exhaust and some merit to the proposed new claim.

Applicable Standard Irrelevant – Respondents have argued that Petitioner's claims are all procedurally defaulted.  Because the undersigned concludes that the Petition is plainly barred by the habeas statute of limitations, the undersigned does not reach the exhaustion and procedural default issues. Nonetheless, regardless which standard would apply, the viability of the proposed new claims is relevant to the decision whether to grant a stay.

**Merits of Proposed New Claim** – The undersigned finds that Petitioner's proposed new claims are without merit for two reasons: (1) they are unsupported by the law and facts; and (2) they are time barred.

Newly Discovered Evidence - Petitioner fails to show that a claim of newly discovered evidence would be cognizable in this habeas proceeding.  While newly discovered evidence may justify relief under Arizona state law, there is no constitutional right implicated by such a claim.  "[T]he existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." *Townsend v. Sain*, 372 U.S. 293, 317  (1963) *overruled on other grounds by*

1   *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).  *See Herrera v. Collins,* 506 U.S.. 390, 400

2   (1993) (quoting this portion of *Townsend* approvingly).

3        To the extent that Petitioner's motion should be liberally construed to assert a

4   claim of actual innocence (as opposed to simply asserting newly discovered evidence),

5   the claim would also be without merit.

6        It is, at best, unresolved whether a claim of actual innocence based on newly

7   discovery evidence is sufficient to justify relief under 28 U.S.C. § 2254, absent some

8   claim of Constitutional or other error.  "We have not resolved whether a freestanding

9   actual innocence claim is cognizable in a federal habeas corpus proceeding in the non-

10  capital context, although we have assumed that such a claim is viable." *Jones v. Taylor*,

11  763 F.3d 1242, 1246 (9th Cir. 2014). *See also Carriger v. Stewart*, 132 F.3d 463 (9th

12  Cir. 1997).[3]  In *Herrera v. Collins*, 506 U.S. 390 (1993), C.J. Rehnquist, the Court held

13  that "Claims of actual innocence based on newly discovered evidence have never been

14  held to state a ground for federal habeas relief absent an independent constitutional

15  violation occurring in the underlying state criminal proceeding….This rule is grounded

16  in the principle that federal habeas courts sit to ensure that individuals are not imprisoned

17  in violation of the Constitution -- not to correct errors of fact." *Herrera v. Collins*, 506

18  U.S. 390, 400 (1993).

19       Even if this Court were to assume that such a claim was viable, Petitioner has

20  failed to proffer anything to meet the extraordinarily high standard for making out such a

21  claim.  "[A]t a minimum, the petitioner must 'go beyond demonstrating doubt about his

22  guilt, and must affirmatively prove that he is probably innocent.' " *Jones*, 763 F.3d at

23  1246 (quoting *Carriger*, 132 F.3d at 476).   At best, Petitioner proffers evidence to

24  undermine the credibility of some of the evidence presented by the prosecution to show

25  his guilt.  He argues, in essence, that it would create a reasonable doubt about his guilt,

26

27  [3] Two Ninth Circuit cases have suggested in *dicta* that *Carriger* actually held that a
    freestanding claim of actual innocence existed. *See Turner v. Calderon*, 281 F.3d 851,
28  872 (9th Cir. 2002); and *U.S. v. Berry*, 624 F.3d 1031, 1038 n. 6 (9th Cir. 2010). *Jones*
    however, clarifies that no such holding was made in *Carriger*.

9

and result in an acquittal.  But, he proffers no affirmative evidence of his innocence.

Due Process Claim – Petitioner also posits that the purported defects in the forensic evidence implicates due process concerns.  Habeas review of evidentiary claims does not extend to enforcement of rules of evidence.  "Even if the state court admitted the evidence in error, we cannot disturb the state trial court's admission of [evidence] on due process grounds in a habeas proceeding unless the admission ... rendered the trial fundamentally unfair." *Jackson v. Brown,* 513 F.3d 1057, 1082 (9th Cir.2008).

In the context of challenging evidence as scientifically unsound, "it is not enough that the evidence introduced against him was of low probative value or was of questionable reliability.  Rather, [the petitioner] must establish that the evidence was so arbitrary that 'the factfinder and the adversary system [were] not ... competent to uncover, recognize, and take due account of its shortcomings.' " *United States v. Berry*, 624 F.3d 1031, 1040 (9th Cir. 2010) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983)).

In *Berry,* the defendant argued that a study by the National Research Council questioning the scientific credibility of forensic analyses of the chemical composition of the lead in bullets ("CABL") (e.g. to connect a bullet from the crime with unused bullets in the possession of the defendant) so undermined the validity of the testimony that the use of the testimony was a violation of due process. The Ninth Circuit rejected that argument:

> While the CABL evidence introduced against Berry may have been flawed, we do not find it so arbitrary as to render Berry's trial "fundamentally unfair." The criticisms of CABL evidence that Berry relies on indicate that it is precisely the kind of evidence that the adversary system is designed to test. Vigorous cross-examination would have exposed its flaws to the jury.

*Berry*, 624 F.3d at 1040.

The criticisms of the bullet evidence in *Berry* are functionally no different than the criticisms of the forensic techniques discussed in the NAS Report now relied upon by Petitioner.  In essence, both reports assert that given the available science there are

substantial limits to the abilities of forensic examiners to individuate pieces of evidence (bullets, fibers, shoeprints, tire tracks, etc.) so as to definitively connect them to a person or defendant.  Petitioner has proffered no reason to believe that the same potential for vigorous cross-examination found by the *Berry* court to avoid due process concerns was not available to Petitioner in this case.

<u>Time Bar</u> – Second, for the reasons discussed hereinafter, any new claim would be untimely, and barred by the habeas statute of limitations.

**Conclusion** – Accordingly, Petitioner's Motion to Hold Petition in Abeyance (Doc. 9) should be denied.


# B. TIMELINESS

## 1.  One Year Limitations Period

Respondents assert that Petitioner's Petition is untimely.  As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-year statute of limitations for all applications for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254, challenging convictions and sentences rendered by state courts.  28 U.S.C. § 2244(d).  Petitions filed beyond the one year limitations period are barred and must be dismissed.  *Id.*

The one-year statute of limitations under AEDPA applies to each claim in a habeas corpus application on an individual basis, as opposed to application to the petition as a whole. *Mardesich v. Cate*, 668 F.3d 1164, 1170 (9th Cir. 2012)

## 2.  Commencement of Limitations Period

**Conviction Final** - The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. §

2244(d)(1)(A).[4]

Here, Petitioner's direct appeal remained pending through November 22, 1995, when the Arizona Supreme Court denied his Petition for Review.  (Exhibit Q.)

It is well established in the Ninth Circuit that for purposes of 28 U.S.C. § 2244, "direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. *See Bowen v. Roe*, 188 F.3d 1157, 1158 (9th Cir.1999).  The rules of the Supreme Court of the United States, requires that a petition for a writ of certiorari be filed "within 90 days after entry of the order denying discretionary review." U.S.S.Ct. R. 13(1). Accordingly, because Petitioner did not file a petition for a writ of certiorari, his conviction became final on February 20, 1996, 90 days after the Arizona Supreme Court denied review.

However, at that time, the AEDPA's habeas statute of limitations had not yet become effective.  Where a petitioner's "conviction became final before AEDPA took effect, the federal limitations period began running on AEDPA's effective date, April 24, 1996, giving [the petitioner] one year from that date (in the absence of tolling) to file a federal habeas petition."  *Carey v. Saffold*, 536 U.S. 214, 217 (2002)  Thus, all federal habeas corpus claims concerning state court judgments finalized prior to April 24, 1996, had to be filed by April 23, 1997, or they were barred by the statute of limitations absent a showing that the circumstances surrounding the filing of the petition fell into one of the categories listed in § 2244(d)(1)(B)-(D).

Because Petitioner's conviction was final prior to April 24, 1996, he had until April 23, 1997 to file his federal habeas petition, making his August, 2014 petition over 17 years delinquent.[5]

---

[4]  Later commencement times can result from a state created impediment, newly recognized constitutional rights, and newly discovered factual predicates for claims. *See* 28 U.S.C. § 2244(d)(1)(B)-(D).  Except as discussed hereinafter, Petitioner proffers no argument that these apply.
[5]  Petitioner's habeas Petition is dated August 4, 2014. (Petition, Doc. 1 at 11, physical page 20.)  Even if this Court were to find that the Petition should be deemed filed as of

**Discovery of Factual Predicate** – Although the conclusion of direct review normally marks the beginning of the statutory one year, section 2244(d)(1)(D) does provide an alternative of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."   Thus, where despite the exercise of due diligence a petitioner was unable to discover the factual predicate of his claim, the statute does not commence running on that claim until the earlier of such discovery or the elimination of the disability which prevented discovery.  However, the commencement is not delayed until actual discovery, but only until the date on which the factual predicate "could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).

"Although section 2244(d)(1)(D)'s due diligence requirement is an objective standard, a court also considers the petitioner's particular circumstances." *Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012).   Thus, the court must consider the unique circumstances of the petitioner, including the availability of counsel and other forms of assistance at the relevant times, and then consider when an objectively reasonably diligent petitioner in those circumstances could have discovered the factual predicate.

To the extent that a petitioner refers to recently discovered evidence, such evidence is not the "factual predicate" of his claims, but rather the evidence of those facts.  *See Flanagan v. Johnson*, 154 F.3d 196, 198-99 (5th Cir.1998) (receipt of trial counsel's affidavit irrelevant where knowledge of facts supporting claim ineffectiveness previously known to defendant).  Where the "factual predicate" was previously known or reasonably available to the petitioner, and it was only the discovery of the supporting evidence that was delayed, an attempt by the petitioner to rely on section 2244(d)(1)(D) would conflate knowledge of the "factual predicate" of a claim with the development of sufficient evidentiary support to prove the facts.

that date rather than August 6, 2014 when it was received by the Clerk, the two days would not be sufficient to make Petitioner's Petition timely.

The Claims – Petitioner's Motion to Hold in Abeyance asserts two new claims: (1) that deficiencies in the fiber, shoeprint and tire track analyses establish his actual innocence; and (2) that the reliance upon such analyses to convict was a denial of due process.

The Factual Predicate - Here, Petitioner argues that he did not discover the factual predicate of his proposed claim based on the credibility of the forensic evidence until 2014.  (Exhibit Z, 5th PCR Not. at 6.)  Petitioner's assertion (based on a 2009 study Petitioner received in October, 2014) is essentially that the forensic witnesses' conclusions were unsupported or fabricated. However, Petitioner asserted as early as his "Writ of Habeas Corpus," filed prior to sentencing, that the prosecution was "white washing existing evidence and fabricating new evidence."  (Reply, Doc. 18, Attachments, Writ of Habeas Corpus at 3.)

Moreover, the potential for challenges of forensic testimony based upon defects in scientific analysis, bias, etc. has been inherent in the presentation of such testimony since the inception of forensic science.  Petitioner points to nothing in the proffered study which has not long been common fodder for cross examination of expert testimony and debate in the legal community.  *See e.g* Erica Beecher-Monas, *Blinded by Science: How Judges Avoid the Science in Scientific Evidence*, 71 Temp. L. Rev. 55, 100-01 (1998).

Petitioner argues that the report "has completely discredited the old and antiquated forensic methodologies of fiber, tire track and shoe print analysis." (Motion, Doc. 9 at 3.)  To be sure, the NAS Report recognizes that these fields, like any other field of expert opinion, may be helpful but are subject to the common risks of opinion testimony, including defects in the underlying science, application of the science in a given case, overstating confidence in data, and the bias which may affect judgments of the examiner.  Those concerns are not new, however.

With regard to fiber evidence, the NAS report observed that: "Fiber examiners agree, however, that none of these [distinguishing] characteristics is suitable for individualizing fibers (associating a fiber from a crime scene with one, and only one,

14

1   source) and that fiber evidence can be used only to associate a given fiber with a class of

2   fibers." NAS Report at 161. But, fiber evidence has long been known to be of limited

3   value. *See e.g. Bonin v. Vasquez*, 807 F. Supp. 589, 596 (C.D. Cal. 1992) *aff'd sub nom.*

4   *Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995) ("Given the imprecise nature of fiber

5   analysis, the additional testimony of a carpet fiber expert would add very little. Indeed,

6   each prosecution witness testifying about the carpet fibers acknowledged that the fiber

7   comparisons showed only that there were no dissimilarities between the fibers found on

8   the bodies and the fibers taken from the carpeting in petitioner's van. The witnesses

9   further admitted that they could never prove conclusively the source of the fibers found

10  on the bodies."). *See also* Paul C. Giannelli*, Criminal Discovery, Scientific Evidence,*

11  *and DNA,* 44 Vand. L. Rev. 791, 812 (1991) (discussing difficulties with fiber analysis).

12      With regard to impression evidence (shoeprints and tire tracks), the NAS Report

13  similarly discussed the limits of analysis of such evidence, focusing particularly on the

14  problems with the subjective nature of the comparisons and establishing a degree of

15  confidence in an identification. NAS Report at 149-150. Those concerns have also long

16  been topics of discussion in the legal world. *See e.g. State v. Runningeagle,* 176 Ariz.

17  59, 69, 859 P.2d 169, 179 (1993) (discussing challenges to shoeprint expert testimony);

18  and *United States v. Ford*, 481 F.3d 215, 219 (3d Cir. 2007) (discussing limits on

19  reliability of shoeprint analysis).

20      In sum, while the NAS Report may have been a highly publicized recognition of

21  the limits of forensic science, it did not invent the topic. It is that topic which is the

22  factual predicate of Petitioner's claim, and that factual predicate has long been available

23  to Petitioner. The NAS Report is, at best, some evidence of that factual predicate.

24      Moreover, the NAS Report is arguably not even "evidence." It made no

25  examination of Petitioner's case, the specific forensic analyses utilized, nor the specific

26  examiners. It amounts to little more than a blueprint for potential attacks on the

27  prosecution's forensic evidence. But it is not, by itself, evidence relevant to Petitioner's

28  case.

1       <u>Due Diligence</u> - Petitioner proffers nothing to show that the factual predicate of

2   his proposed claims could not have been discovered, through the exercise of due

3   diligence, far earlier than October, 2014.  Indeed, Petitioner does not even suggest that

4   his discovery of the NAS Report was the result of due diligence, but a happenstance

5   from a conversation with other inmates.  (Exhibit Z, 5th PCR Not. at 6.)

6       Indeed, the factual predicate was available to Petitioner at the time of trial.  At

7   that time, and throughout his first PCR proceeding and direct appeal, Petitioner was

8   represented by counsel, and the failings[6] of counsel to pursue that available information

9   are attributable to Petitioner for purposes of showing due diligence in discovering the

10  factual predicate of claims. *See Wood v. Spencer*, 487 F.3d 1, 4-5 (1st Cir. 2007); *Rivas v.*

11  *Fischer*, 687 F.3d 514 (2nd Cir. 2012).  Thus, Petitioner's complaints about his mental

12  illness, medicated state, lack of legal resources, etc. are unavailing.

13      <u>Conclusion re Discovery of Factual Predicate</u> - Petitioner fails to meet his burden

14  of showing that the factual predicate of his attacks on the forensic evidence at trial could

15  not have been discovered through the exercise of due diligence until October, 2014, nor

16  at any date prior to the finality of his conviction and commencement of the running of

17  his habeas limitations period.

18      **New Rule of Law** – Liberally construed, the Petition argues that the  petition is

19  based on the recent decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (March 20, 2012).

20  (Petition, Doc. 1 at 20.)   Section 2244(d)(1)(C) provides that the habeas limitations

21  period runs from "the date on which the constitutional right asserted was initially

22  recognized by the Supreme Court, if the right has been newly recognized by the Supreme

23  Court and made retroactively applicable to cases on collateral review."   *Martinez,*

24  however, did not recognize a new constitutional right.  To the contrary, *Martinez*  was

---

[6] The undersigned presumes failings by trial counsel.  It may be that trial counsel actually recognized the limitations of the forensic analyses and fully cross-examined the forensic witnesses accordingly, effectively exploiting the factual predicate, and making the NAS Report unnecessary even as purported evidence.  Respondents have not, however, provided the trial transcripts with their Limited Answer, and nothing in the provided record shows such actions.

limited to creating an exception to the bar on considering ineffective assistance of PCR counsel as cause to excuse a procedural default.  While the Court noted an outstanding question whether there was an "exception to the constitutional rule that there is no right to counsel in collateral proceedings," the Court also was clear that "[t]his is not the case, however, to resolve whether that exception exists as a constitutional matter." *Martinez*, 132 S. Ct. at 1315.

**Conclusion re Commencement** – Based on the foregoing, the undersigned concludes that Petitioner's one year on the claims in his existing Petition (Doc. 1) and those proposed in his Motion to Hold in Abeyance (Doc. 9) expired on April 23, 1997. Without the benefit of any tolling, Petitioner's August, 2014 existing federal habeas petition was over 17 years delinquent, and any new petition filed now would be over 18 years delinquent.

**3. Statutory Tolling**

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  This provision only applies to state proceedings, not to federal proceedings. *Duncan v. Walker*, 533 U.S. 167 (2001).

Petitioner's First PCR proceeding was concluded on May 26, 1994, before his limitations period began running. (Exhibit J, M.E. 5/26/94.)  Thus, this proceeding did not result in any tolling.

Petitioner's Second PCR proceeding was not commenced until June 18, 2013, when Petitioner filed his second PCR petition.[7]  (Exhibit S.) At that time, his one year on his existing claims had been expired for over 16 years.  Once the statute has run, a subsequent post-conviction or collateral relief filing does not reset the running of the one year statute. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *Ferguson v. Palmateer*,

---

[7] Petitioner's second PCR Notice was dated June 13, 2013.  (Exhibit S at 4.)  Even if treated as mailed as of that date, the difference of five days would not alter the outcome.

321 F.3d 820, 823 (9th Cir. 2003).   Accordingly, Petitioner has no statutory tolling resulting from his second PCR proceeding, or from his third, fourth, fifth, or subsequent PCR proceedings, and his limitations period expired on April 23, 1997.

Consequently, after consideration of statutory tolling, Petitioner's existing habeas petition and his proposed claim remain delinquent.

### 4.  Equitable Tolling

"Equitable tolling of the one-year limitations period in 28 U.S.C. § 2244 is available in our circuit, but only when 'extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time' and 'the extraordinary circumstances were the cause of his untimeliness.'"  *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003).

> To receive equitable tolling, [t]he petitioner must establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way. The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances ma[de] it impossible to file a petition on time.

*Ramirez v. Yates,* 571 F.3d 993, 997 (9th Cir. 2009) (internal citations and quotations omitted).   "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.' "  *Miranda v. Castro,* 292 F.3d 1063, 1066 (9th Cir. 2002)  (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.). Petitioner bears the burden of proof on the existence of cause for equitable tolling.  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate.").

Petitioner proffers as a basis for equitable tolling the argument that he has suffered from mental illness, and that he was forcibly medicated until 2001, by which time ADOC had removed the law libraries from the state prisons, rendering Petitioner

unable to conduct research.  Petitioner further complains that he did not have case law regarding the delayed effective date of the AEDPA available to him.

**Lack of Case Law** – The inadequacies of a prison law library and lack of notice of the AEDPA may be extraordinary circumstances. *Whalem/Hunt v. Early*, 233 F.3d 1146 (9th Cir. 2000). However, in cases where courts have found that an extraordinary circumstance might exist, the petitioner always pointed to specific materials to which he did not have access. *See e.g, Roy v. Lampert*, 465 F.3d 964, 974 (9th Cir. 2006) (finding that lack of access to AEDPA materials and Oregon law books may be an extraordinary circumstance); *Mendoza v. Carey*, 449 F.3d 1065 (9th Cir. 2006) (finding that lack of access to Spanish language legal materials or assistance could entitle habeas petitioner to equitable tolling).

Here, the only specific legal resource Petitioner contends was unavailable was *Patterson v. Stewart*, 251 F.3d 1243 (9th Cir. 2001).  At least as of his third PCR Notice in September, 2013 (Exhibit U), Petitioner was able to reference a large variety of case law.  *Patterson* discussed the application of *Beeler*, 128 F.3d 1283, and concluded that for prisoners whose convictions became final prior to the effective date of the AEDPA, the one year expired on April 23, 1997, rather than April 24, 1997.  Petitioner fails to show how lack of access to this case precluded him from filing earlier.

To the extent that Petitioner might intend to argue that he was simply unaware of any grace period, Petitioner fails to show how the lack of such information precluded an earlier filing.  For example, Petitioner does not assert that he had concluded (based on a bare reading of the AEDPA) that his one year had expired before April 23, 1997, and thus did not file a habeas petition, believing it to be time barred.  In *Bryant v. Schriro*, 499 F.3d 1056 (9th Cir. 2007), the Ninth Circuit rejected an argument that lack of access to interpreting case law established either a state created impediment (under 28 U.S.C. § 2244(d)(1)(B)) or a ground for equitable tolling.  The court reasoned that the Petitioner was unaware of the statute of limitations while it was running, thus "the unavailability of case law interpreting the statute of limitations during that time period could not have

been the cause" for the delay. *Id.* at 1060.   Petitioner proffers nothing to suggest that he was even aware of the habeas limitations period, let alone relying upon the absence of a grace period.

Even if Petitioner were to make such assertions, Petitioner proffers nothing to show that his misunderstanding made it impossible for him to file, only that it made him wrongly decide a filing would be futile.  A petitioner's "inability correctly to calculate the limitations period is not an extraordinary circumstance warranting equitable tolling." *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006).  "It is clear that *pro se* status, on its own, is not enough to warrant equitable tolling." *Roy v. Lampert,*  465 F.3d 964, 970 (9th Cir. 2006).  A prisoner's "proceeding *pro se* is not a 'rare and exceptional' circumstance because it is typical of those bringing a § 2254 claim."  *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000).   *See also Rasberry,* 448 F.3d at 1154 ("a *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling").

Moreover, while Petitioner complains that the NAS Report was unavailable to him, he does not assert that other resources sufficient to allow him to challenge the credibility of the forensic evidence were unavailable to him.

Moreover, Petitioner proffers nothing to suggest that he was diligent in the face of any such deficiencies in legal research materials.  For example, in *Roy*, the petitioner had complained to prison officials about the lack of necessary research materials, and filed a federal lawsuit challenging the deficiencies.  465 F.3d at 970-971.  Here, Petitioner makes no suggestion that he had even requested additional research materials and had been denied them, let alone that he had gone to the lengths shown in *Roy*.

**Mental Illness** –   "Where a habeas petitioner's mental incompetence in fact caused him to fail to meet the AEDPA filing deadline, his delay was caused by an "extraordinary circumstance beyond [his] control," and the deadline should be equitably tolled." *Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir. 2003).

However, a habeas petitioner must allege more than the "mere existence of

physical or mental ailments" to invoke the equitable tolling of the AEDPA's statute of limitations. *Rhodes v. Senkowski*, 82 F.Supp.2d 160, 173 (S.D.N.Y.2000). "[M]ental incompetence is not a *per se* reason to toll a statute of limitations. Rather, the alleged mental incompetence must somehow have affected the petitioner's ability to file a timely habeas petition." *Nara v. Frank,* 264 F.3d 310, 320 (3rd Cir. 2001), *overruled in part on other grounds by Carey v. Saffold*, 536 U.S. 214 (2002). "[M]ental illness tolls a statute of limitations only if the illness in fact prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them. Any other conclusion would perpetuate the stereotype of the insane as raving maniacs or gibbering idiots." *Miller v. Runyon,* 77 F.3d 189, 191 -192 (7th Cir. 1996) (applying equitable tolling to Rehabilitation Act).

In *Bills v. Clark*, 628 F.3d 1092 (9th Cir. 2010), the Ninth Circuit articulated a two-part test to determine whether a mental impairment amounts to an "extraordinary circumstance" warranting equitable tolling.

> (1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control by demonstrating the impairment was so severe that either
>> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>> (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Id.* at 1093. This is not "a mechanical rule"; rather, equitable tolling determinations require "a flexibl[e], case-by-case approach." *Id.* at 1096 (quoting *Holland*, 560 U.S. at 650) (internal quotation marks omitted). *Compare Forbess v. Franke*, 781 F.3d 1075 (9th Cir. 2014) (delusional petitioner believing conviction was a ruse by the FBI to maintain his cover as informant and lure wife out of hiding); and *Calderon v. U.S. Dist. Court for Cent. Dist. of Cal.* (Kelly III), 127 F.3d 782, 788 n.1 (9th Cir. 1997), *overruled in later appeal on other grounds*, 163 F.3d 530 (1998) (finding equitable tolling for inmate "diagnosed as suffering from a psychotic disorder, with such symptoms as

delusions, hallucination, inappropriate affect, social withdrawal, bizarreness, fragmentation of thinking, and incoherence"); with *Yow Ming Yeh v. Martel*, 751 F.3d 1075, 1078 (9th Cir.) *cert. denied sub nom. Yow Ming Yeh v. Biter*, 135 S. Ct. 486 (2014) (claim of mental impairment refuted where petitioner "repeatedly sought administrative and judicial remedies, and throughout these proceedings showed an awareness of basic legal concepts")and *Gaston v. Palmer*, 417 F.3d 1030, 1035 (9th Cir. 2005), *modified on other grounds*, 447 F.3d 1165 (9th Cir. 2006) ("Because [petitioner] was capable of preparing and filing state court petitions [during the limitations period], it appears that he was capable of preparing and filing a [federal] petition during the time in between those dates.").

Further, "even in cases of debilitating impairment the petitioner must still demonstrate diligence." *Yeh*, 751 F.3d at 1078. For example, "[w]ith respect to the necessary diligence, the petitioner must diligently seek assistance and exploit whatever assistance is reasonably available." *Bills*, 628 F.3d at 1101.

Although mental illness may in some cases warrant an evidentiary hearing to determine the scope of the illness, *Laws*, 351 F.3d at 923–24, a district court is not obligated to hold such a hearing where "the record is amply developed, and where it indicates that the petitioner's mental incompetence was not so severe as to cause the untimely filing of his habeas petition[.]" *Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010).

Here, Petitioner fails to show that his mental illness precluded a timely filing.

Petitioner argues that he was heavily medicated until 2001. Assuming that to be true, and even assuming that such medication made it impossible for him to file, that condition ended some 13 years before Petitioner filed his existing Petition (and then subsequently sought to add his new claims).

Petitioner argues that he was in a locked down psychiatric facility at the Arizona Department of Corrections SPU facility at APSC-Florence. Assuming that to be true, and assuming that such lockdown continued beyond the time Petitioner was heavily

medicated (discussed above), Petitioner proffers nothing to show that his mental condition was sufficiently impaired during that time to prevent a timely filing.  Further, Petitioner proffers nothing to show that the lockdown itself precluded a timely filing. This Court routinely receives filings from prisoners held in various forms of lockdown within the Arizona Department of Corrections.   Further, Petitioner fails to proffer anything to show when that condition ended.  However, by the time he filed his second PCR Notice on June 18, 2013, Petitioner had been relocated to ASPC-Tucson's Cimmaron Unit.  Petitioner did not promptly thereafter seek to file his federal petition, but waited (at least) over a year later to do so.

**Combined Effect** – Nor do the combined effects of Petitioner's mental illness and the intervening removal of case law from Arizona's prisons establish grounds for equitable tolling.

Even if extraordinary circumstances prevent a petitioner from filing for a time, equitable tolling will not apply if he does not continue to diligently pursue filing afterwards.  "If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing."  *Valverde v. Stinson*, 224 F.3d 129, 134 (2nd Cir. 2000).  Ordinarily, thirty days after elimination of a roadblock should be sufficient.  *See Guillory v. Roe*, 329 F.3d 1015, 1018, n.1 (9th Cir. 2003).

Petitioner proffers nothing to show that in the face of his asserted roadblocks he acted diligently.  The record reflects that by June of 2013 Petitioner was able to prepare and submit state court filings.  Indeed, he proceeded to file a series of four such proceedings.  Despite that established ability, Petitioner did not file the instant habeas petition until August, 2014, some fourteen months later.  Petitioner proffers no explanation for that additional delay.  *See Gaston*, 417 F.3d at 1035, (ability to file in state court demonstrated ability to file habeas petition).

**Summary** – Based on the foregoing, the undersigned concludes that Petitioner fails to establish grounds for equitable tolling, or to allege sufficient facts to warrant an evidentiary hearing on the issue of equitable tolling.

## 5.  Actual Innocence

To avoid a miscarriage of justice, the habeas statute of limitations in 28 U.S.C. § 2244(d)(1) does not preclude "a court from entertaining an untimely first federal habeas petition raising a convincing claim of actual innocence."  *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1935 (2013).   To invoke this exception to the statute of limitations, a petitioner "'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 1935 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  This exception, referred to as the "*Schlup* gateway," applies "only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.' " *Id.*  at 1936 (quoting *Schlup,* 513 U.S. at 316).

Petitioner makes no such claim in this proceeding of actual innocence to avoid the effects of the statute of limitations.  Nor has Petitioner asserted facts which would make a showing of such actual innocence.

**NAS Report** - As discussed hereinabove in connection with the Motion to Hold in Abeyance, the NAS Report is neither new, nor evidence, nor does it show Petitioner's actual innocence.  At best, the NAS Report provides a basis upon which Petitioner could attempt to challenge part of the prosecutions' evidence against him.  It is not evidence of Petitioner's innocence.

**Premeditation** - Petitioner has also challenged the legal basis for a finding of premeditation. But, "the miscarriage of justice exception is concerned with actual as compared to legal innocence." *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).

"One way a petitioner can demonstrate actual innocence is to show in light of

24

1   subsequent case law that he cannot, as a legal matter, have committed the alleged crime."

2   *Vosgien v. Persson*, 742 F.3d 1131, 1134 (9th Cir. 2014).   It is irrelevant that the

3   petitioner may have been guilty of some crime, if he was innocent of the crime for which

4   he was convicted.  *Id.* at 1135.  However, Petitioner fails to establish that, as a legal

5   matter, he could not have committed first degree, premeditated murder.

6          At best, Petitioner complains that he was convicted without a showing of

7   premeditation because the jury was allowed to convict him based upon a mere passage of

8   a moment of time between the formation of intent and the murder.  Indeed, the Arizona

9   statute appears to permit such a reading.  " 'Premeditation' means that the defendant acts

10  with either the intention or the knowledge that he will kill another human being, when

11  such intention or knowledge precedes the killing by any length of time to permit

12  reflection. Proof of actual reflection is not required, but an act is not done with

13  premeditation if it is the instant effect of a sudden quarrel or heat of passion."  Ariz. Rev.

14  Stat. § 13-1101(1) (1978).

15         The Arizona Supreme Court addressed this concern in *State v. Thompson*, 204

16  Ariz. 471, 65 P.3d 420 (2003), and held that if Arizona's premeditation statute were

17  construed to permit the *mens rea* element to be met by showing "the mere passage of

18  time, and that length of time can be 'as instantaneous as successive thoughts of the

19  mind,' then there is no meaningful distinction between first and second degree murder.

20  Such an interpretation would relieve the state of its burden to prove actual reflection and

21  would render the first degree murder statute impermissibly vague and therefore

22  unconstitutional under the United States and Arizona Constitutions."  *Id.* at 478, 65 P.3d

23  at 427.

24         However, the state court did not mandate that the required reflection continue for

25  any specific passage of time.  Rather, evidence of actual reflection was sufficient, and

26  could be shown by circumstantial evidence.

27                     But the state may use all the circumstantial evidence at its disposal
                       in a case to prove premeditation. Such evidence might include,
28                     among other things, threats made by the defendant to the victim, a

25

1
2
3

> pattern of escalating violence between the defendant and the victim,
> or the acquisition of a weapon by the defendant before the killing. In
> short, the passage of time is but one factor that can show that the
> defendant actually reflected. The key is that the evidence, whether
> direct or circumstantial, must convince a jury beyond a reasonable
> doubt that the defendant actually reflected.

4   *Thompson*, 204 Ariz. at 479, 65 P.3d at 428.   Thus, the passage of time was not

5   sufficient, but neither was it necessary, to show actual reflection.   "It is the act of

6   premeditation and not the length of time available that determines the question." *Id.* at

7   479-80, 65 P.3d at 428-29.   And, where the facts warrant, trial judges were authorized to

8   instruct "that the time needed for reflection is not necessarily prolonged, and the space of

9   time between the intent [knowledge] to kill and the act of killing may be very short." *Id.*

10   at 479, 65 P.3d at 428.

11        Perhaps Petitioner intends to argue that the evidence of actual reflection at trial

12   was insufficient to support his premeditated murder charge.[8]   However, a finding of

13   "actual innocence" is not to be based upon a legal insufficiency.   Thus, a finding that

14   insufficient evidence to support the charge was presented at trial does not suffice, but

15   rather a petitioner must make an affirmative showing of factual innocence.   *See U.S. v.*

16   *Ratigan*, 351 F.3d 957 (9th Cir. 2003) (lack of proof of FDIC insurance in a bank

17   robbery case, without evidence that insurance did not exist, not sufficient to establish

18   actual innocence).

19        Here, Petitioner proffers no new evidence to show that he did not actually reflect

20   before murdering his wife.   That is all that was required to meet the requirements of the

21   Arizona statute.

22        **Summary re Actual Innocence** – Petitioner has failed to proffer new evidence of

23   his actual innocence sufficient to avoid the effects of the habeas statute of limitations.

24

25   **6.  Summary re Statute of Limitations**

26        Petitioner's one year habeas limitations period on his existing Petition and his

27
28   _____

[8] Petitioner also asserts that the jury was incorrectly instructed, permitting him to be convicted without the required evidence of actual reflection.  While that argument might state a claim for relief, it does not establish actual innocence of the crime.

26

proposed new claims commenced running on April 24, 1996, and expired on April 23, 1997, making his August, 2014 Petition over 17 years delinquent and any new claims over 18 years delinquent.  Petitioner has shown no basis for statutory tolling, and no basis for equitable tolling or actual innocence that would render his Petition or proposed new claims timely.

Consequently, the Petition must be dismissed with prejudice.

## C.  EXHAUSTION, PROCEDURAL BAR, AND PROCEDURAL DEFAULT

In addition to relying on the habeas statute of limitations, Respondents argue that Petitioner's state remedies on his claims have either been procedurally defaulted, or the claims have been disposed of on an independent and adequate state procedural bar.

Because the undersigned finds the Petition plainly barred as untimely, the undersigned does not reach this alternative defense.

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the

constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**<u>Standard Not Met</u>** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on procedural grounds. Under the reasoning set forth herein, jurists of reason would not find it debatable whether the district court was correct in its procedural ruling.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion to Hold Petition in Abeyance, filed November 7, 2014 (Doc. 9) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed August 6, 2014 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules*

28

*of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*), and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: April 27, 2015

14-1756r RR 15 04 20 on HC.docx

James F. Metcalf
United States Magistrate Judge