IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patrick Casey McAuley, | No.  CV-14-01756-PHX-SPL |
| Petitioner, | |
| vs. | **ORDER** |
| Charles L. Ryan, et al., | |
| Respondents. | |

Before the Court is Petitioner Patrick Casey McAuley's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1), and Motion to Hold Petition (Doc. 9). The Honorable James F. Metcalf, United States Magistrate Judge, issued a Report and Recommendation ("R&R") (Doc. 19), recommending that the petition and motion be denied; Petitioner has objected to the R&R (Docs. 23). For the reasons that follow, the Court accepts and adopts the R&R, and denies the petition.

**I.     Background**

In 1991, Petitioner was indicted in the Maricopa County Superior Court, Case No. CR 1991-000922, for first degree premeditated murder of his wife, Paula McAuley.[1] (Doc. 15-1, Exh. A.)[2] Petitioner was found guilty by jury trial (Doc. 15-1, Exh. A), and on August 21, 1992, he was sentenced to life imprisonment without the possibility of

---

[1]     The Court notes that Petitioner and the victim's last name are spelled interchangeably as "McAuley" and "McCauley."

[2]     Petitioner does not object to the Magistrate Judge's factual summary, which the Court adopts and incorporates by reference.

parole until serving 25 years of flat time. (Doc. 15-1, Exh. C.)

On August 8, 2014, Petitioner filed a Petition for Writ of Habeas Corpus in District Court (Doc. 1), raising three claims for relief. He also has filed a Motion to Hold Petition (Doc. 9), in which he moves to stay this action while he exhausts a new claim in state court. Respondents have responded to each (Docs. 13, 15), arguing that the motion should be denied, that the petition should be dismissed as untimely, and alternatively, that Petitioner's claims are procedurally defaulted and barred from federal habeas corpus review.

**II.   Standard of Review**

The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge in a habeas case. *See* 28 U.S.C. § 636(b)(1). The Court must undertake a *de novo* review of those portions of the R&R to which specific objections are made. *See id.;* Fed. R. Civ. P. 72(b)(3); *United States v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir. 2003). However, a petitioner is not entitled as of right to *de novo* review of evidence and arguments raised for the first time in an objection to the R&R, and whether the Court considers the new facts and arguments presented is discretionary. *United States v. Howell*, 231 F.3d 615, 621-622 (9th Cir. 2000).

**III.   Discussion**

Having reviewed the objected to recommendations *de novo*, the Court finds that the Magistrate Judge correctly concluded that Petitioner's claims are time-barred.

The writ of habeas corpus affords relief to persons in custody pursuant to the judgment of a State court in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a). Such petitions are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").[3] 28 U.S.C. § 2244. The AEDPA imposes a 1-year statute of limitations in which "a person in custody

_____

[3]    The AEDPA applies to federal habeas petitions filed after its effective date, April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

pursuant to the judgment of a State court" can file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1).

### A.    Commencement of Limitations Period

Petitioner was sentenced in 1992. Following denial of a timely direct appeal by Arizona Court of Appeals, on November 22, 1995, the Arizona Supreme Court summarily denied Petitioner's request for review, and affirmed his convictions and sentences.  (Doc. 15-2, Exh. Q.) Therefore, Petitioner's judgment became final in 1995. *See* 28 U.S.C. § 2244(d)(1)(A) (the 1-year limitations period runs from the date on which judgment became final by the conclusion of direct review or the expiration of the time for seeking such review); *Gonzalez v. Thaler*, 565 U.S. __, 132 S. Ct. 641, 656 (2012). Because Petitioner's conviction became final before the enactment of the AEDPA however, the limitations period did not commence until the day after it became effective, April 25, 1996. *See Patterson v. Stewart*, 251 F.3d 1243, 1245 (9th Cir. 2001).

Petitioner objects to the R&R on the basis that the limitations period should be calculated from the date of discovery of the factual predicate of his claim. *See* 28 U.S.C. § 2244(d)(1)(D) (the 1-year limitations period may also run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."). Namely, Petitioner points to his discovery of an August 2009 report published by the National Academy of Sciences ("NAS"). He maintains that new expert testimony addressing the report's findings would prove that the fiber, tire track, and shoe print evidence presented at trial was unreliable. (Docs. 9 at 3; 23 at 6.)

First, while Petitioner's "new" claim may rely on the NAS report, the NAS report does not relate to any of the three claims presented in the instant federal habeas petition. Second, the NAS report does not qualify as the "factual predicate" of his new claim. Rather, the factual predicate of Petitioner's claim is the fiber, tire track, and shoe print evidence, which Petitioner was aware of at the time of trial. *See Hasan v. Galaza,* 254 F.3d 1150, 1154 fnt. 3 (9th Cir. 2001) (the factual predicate is the facts, not the legal significance of those facts); *Shannon v. Newland*, 410 F.3d 1083, 1088–89 (9th Cir.

2005) (distinguishing between discovery of legal clarification and discovery of factual predicate). To any extent Petitioner argues that it is the unreliability of the evidence that is the predicate of his claim, the NAS report was not key to discovering that fact. Petitioner maintains he is not guilty of premeditated murder, and that the forensic evidence presented at trial was therefore fabricated. (Doc. 23 at 12-13.) It follows that the unreliability of the evidence would have been evident to Petitioner at the time of trial, because it would have conflicted with his account of the events that occurred. In fact, Petitioner cites to his state writ of habeas corpus, in which he stated that at the time of trial that he knew the government was "fabricating new evidence." (Doc. 18 at 2-3.) Nevertheless, as reasoned in part by the Magistrate Judge, Petitioner did not need the NAS report to refute the reliability of the forensic evidence at trial, because this "is precisely the kind of evidence that the adversary system is designed to test." *United States v. Berry*, 624 F.3d 1031, 1040 (9th Cir. 2010). Therefore, absent any tolling, the one-year limitations period would have expired in April 1997.

### B. Statutory Tolling of Limitations Period

Petitioner's first post-conviction relief proceedings concluded in 1994, before the limitations period began to toll. (*See* Doc. 15-2, Exh. J.) Petitioner did not file a second petition for post-conviction relief until 2013 (Doc. 15-1, Exh. S), 17 years after the statute of limitations period had expired in 1997. As a result, the second notice of post-conviction relief did not statutorily toll the limitations period under 28 U.S.C. § 2244(d)(2). *See Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001) (once the AEDPA limitations period expires, a subsequently filed petition for post-conviction relief cannot restart the statute of limitations); *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (state petition filed after the expiration of AEDPA's one-year period does not revive a limitations period that ended before state petition was filed).[4] Therefore, because

---

[4] Further, because Petitioner's second post-conviction relief proceeding was denied as untimely (Doc. 15-1, Exh. T), it would not have tolled the limitations period. *See Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) ("Because the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2)").

the limitations period had already expired, the other subsequent notices and petitions for post-conviction relief, including Petitioner's October 2013 Rule 32 petition (Doc. 15-2, Exh. Z), also did not toll the time to file a federal habeas petition. Petitioner's argument that he was required to exhaust his new claim in state court prior to filing a federal habeas petition has no bearing on whether the limitations period was statutorily tolled.

### C.   Equitable Tolling of Limitations Period

Petitioner next objects that the R&R wrongly found that he was not entitled to equitable tolling. The Court agrees with the Magistrate Judge's reasoning however, and finds Petitioner has not established that extraordinary circumstances prevented him from filing a timely federal habeas corpus petition. *See Holland v. Florida*, 560 U.S. 631, 649 (2010) ("a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing" his federal habeas petition) (internal quotations omitted).

Petitioner first objects to R&R on the basis that he lacks access to a "'law library' entirely," which merits equitable tolling. (Doc. 23 at 9.) Among other things, Petitioner asserts that "ADOC provides no information on the AEDPA, AEDPA itself, any federal statutes, no case law or legal authority regarding the same." (Doc. 23 at 10.) True, in certain circumstances, a lack of access to legal resources may be an extraordinary circumstance warranting equitable tolling. *See, e.g., Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (finding that unavailability of a copy of the AEDPA in a prison law library could be grounds for equitable tolling). Petitioner's contention however, is undermined by his own federal habeas petition and filings in this Court, in which he discusses the AEDPA and cites to case law addressing its application. (*See* Docs. 1 at 20; 18; 23.) Therefore, Petitioner has not shown that despite his own diligence, his lack of access to legal recourses resulted in the untimeliness of his petition. *Waldron-Ramsey*, 556 F.3d at 1013.

Petitioner also objects to the R&R on the basis that he has a mental condition that

entitles him to equitable tolling. (Doc. 23 at 9.) *See Laws v. Lamarque*, 351 F.3d 919, 926 (9th Cir. 2003) (where "a habeas petitioner's mental incompetence in fact caused him to fail to meet the AEDPA filing deadline, his delay was caused by an extraordinary circumstance beyond [his] control."); *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010); *Roberts v. Marshall*, 627 F.3d 768 (9th Cir. 2010). Petitioner however, fails to demonstrate that his mental impairment (or impairments) were the "but-for cause of any delay," making it impossible for him to meet the filing deadline. *Bills*, 628 F.3d at 1099-1100. Petitioner alleges that from April 1993 until 2001, he was in a "chemically induced incompetent state." (Doc. 18 at 3.) As discussed by the Magistrate Judge (Doc. 19 at 22), assuming that Petitioner was forced medicated until 2001 as he contends (Doc. 23 at 10), that condition ended 13 years before Petitioner filed a federal habeas petition. Even if Petitioner remained medicated to some degree following 2001, he does not put forth a good-faith showing that his mental impairment remained "so severe" that it constituted an extraordinary circumstance beyond his control. *Bills,* 628 F.3d at 1096; *Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir. 2006) (an evidentiary hearing is warranted where the petitioner "'makes a good faith allegation that would, if true, entitle him to equitable tolling'") (quoting *Laws*, 351 F.3d at 919).

Petitioner does not show that he was prevented from timely filing a federal habeas petition and is entitled to equitable tolling. Therefore, because the instant habeas petition was not filed until 2014, more than a decade after the limitations period expired, his claims are time-barred.

### D.    Innocence Exception to Limitations Period

Lastly, Petitioner objects to the R&R on the basis that his credible claim of actual innocence entitles him to have the merits of his petition considered. To be clear, Petitioner does not claim that he did not kill Paula McAuley. Rather, Petitioner maintains that he is innocent of the crime of first degree *premeditated* murder. He claims that "[t]he newly discovery evidence, once developed, will support Petitioner's actual innocence of First Degree [murder] by removing the entire first crime scene and prove by [coupling] it

with the state's already admitted pos[]ition that the killing was <u>not</u> pre-planned and was the result of heat of passion." (Doc. 23 at 13.)

"[A]n actual-innocence gateway claim" may serve as an exception to AEDPA's limitations period. *McQuiggin v. Perkins*, 569 U.S. __, 133 S. Ct. 1924, 1928 (2013) (also referred to as a "fundamental miscarriage of justice exception") (adopting *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995), holding actual innocence is an exception to procedurally defaulted claims). This exception is applied in rare instances, and a "tenable actual-innocence gateway" claim will not be found unless the petitioner "persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 133 S. Ct. at 1928 (citing *Schlup*, 513 U.S. at 329). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. *See also Lee v. Lampert*, 653 F.3d 929, 945 (9th Cir. 2011); *McQuiggin*, 133 S. Ct. at 1927 (explaining the significance of an "[u]nexplained delay in presenting new evidence").

First, Petitioner objects to the R&R's finding that the NAS Report does not present a tenable actual innocence gateway claim. The Magistrate Judge rejected Petitioner's claim finding "[a]t best, the NAS Report provides a basis upon which Petitioner could attempt to challenge part of the prosecutions' evidence against him. It is not evidence of Petitioner's innocence." (Doc. 19 at 24.) The Court agrees with this reasoning. Even if Petitioner could present expert evidence that discredited the forensic evidence found at the crime scene, it would not refute the other evidence presented at trial supporting the state's theory of premeditation, such as the extensive witness testimony regarding the tumultuous relationship between Petitioner and the victim, the witness testimony regarding the victim's behavior in the hours preceding her murder, and the tape recording of the argument between Petitioner and the victim the night of murder. (*See* Doc. 15-2, Exhs. K, N.) Even if the strength of the evidence weighed in favor of second degree

murder, the Court cannot say that exclusion of the fiber, tire track, and shoe print analysis would have so undermined the state's case that it was more likely than not that no reasonable jury would have convicted Petitioner of first degree murder.

Second, Petitioner objects to the R&R's conclusion that his challenge to the legal finding of premeditation at the time of his conviction does not present a tenable actual innocence gateway claim. He further argues that the Magistrate Judge erred in his discussion of the state statute[5] and *State v. Thompson*, 65 P.3d 420 (Ariz. 2003) (Doc. 23 at 11). In short, Petitioner claims that the premeditation instruction given to the jury unconstitutionally relieved the State of its burden to prove the actual reflection necessary for first degree murder, thereby allowing his conviction to be based merely on instantaneous thoughts. (Doc. 23 at 11-13.) *See State v. Ramirez*, 945 P.2d 376, 382 (Ariz. Ct. App. 1997) (finding that the court's instruction, which "essentially told the jury that an act could be both impulsive and premeditated… obliterated the distinction between first and second degree murder").

"One way a petitioner can demonstrate actual innocence is to show in light of subsequent case law that he cannot, as a legal matter, have committed the alleged crime." *Vosgien v. Persson*, 742 F.3d 1131, 1334 (9th Cir. 2014). Petitioner does not do so here. Petitioner does not show that as a legal matter, he could not have committed first degree *premeditated* murder based on the facts under which he was convicted. More specifically, Petitioner does not show that as a legal matter, he could not have actually reflected before intentionally murdering Paula McAuley. *See Thompson,* 65 P.3d at 428. At best, he offers that under the theories and instructions presented to the jury, as a legal matter, Petitioner could have been found to have committed either first *or* second degree murder. Yet, he

---

[5]     The statutory definition is Ariz. Rev. Stat. 13-1101(1) (1978) provided:

> "Premeditation" means that the defendant acts with either the intention or the knowledge that he will kill another human being, when such intention or knowledge precedes the killing by a length of time to permit reflection. An act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion.

8

1  does not show that he is actually innocent because he could not have committed
2  premeditated murder as a matter of law. *Vosgien*, 742 F.3d at 1135.

3        While Petitioner challenges the constitutional adequacy of the procedures that led
4  to his conviction and inherently the fairness of that conviction, his does not point to
5  evidence of actual, factual innocence. Therefore, Petitioner has not shown that there is
6  new evidence of actual innocence that justifies review of his time-barred claims.

7  **IV.    Conclusion**

8        Having reviewed the record as a whole, and finding none of Petitioner's objections
9  have merit, the R&R will be adopted in full. For the same reasons the Court finds that the
10 petition is time-barred and that he has not presented a tenable innocence gateway claim,
11 Petitioner's objections to the R&R regarding his request to stay and for an evidentiary
12 hearing equally fail. *See House v. Bell*, 547 U.S. 518, 555(2006) (explaining that the a
13 freestanding claim of actual innocence "requires more convincing proof of innocence
14 than [a] *Schlup*" gateway claim); *Stewart v. Cate*, 757 F.3d 929, 942 (9th Cir. 2014)
15 (evidentiary development is not required where, even if the new evidence is fully
16 credited, it would not entitle him to relief); *King v. Ryan*, 564 F.3d 1133, 1141 (9th Cir.
17 2009) (a stay is appropriate only where the newly exhausted claim would relate back to a
18 timely filed federal habeas petition). Accordingly,

19        **IT IS ORDERED:**

20        1.     That Magistrate Judge Metcalf's Report and Recommendation (Doc. 19) is
21 **accepted** and **adopted** by the Court;

22        2.     That the Motion to Hold Petition (Doc. 9) is **denied**;

23        3.     That the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254
24 (Doc. 1) is **denied** and **dismissed with prejudice**;

25        4.     That a Certificate of Appealability and leave to proceed *in forma pauperis*
26 on appeal are **denied** because the dismissal of the Petition is justified by a plain
27 procedural bar and jurists of reason would not find the procedural ruling debatable; and
28 */ / /*

5.     That the Clerk of Court shall **terminate** this action.

Dated this 30th day of July, 2015.

Honorable Steven P. Logan
United States District Judge